## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JONATHON DIAS and
ELISABETH DIAS,

     Plaintiffs,

v.                                                    Case No. 3:19-cv-1303-TJC-JRK

GEOVERA SPECIALTY
INSURANCE COMPANY,

     Defendant.

_____

## O R D E R

    This insurance coverage dispute is before the Court on Defendant GeoVera Specialty Insurance Company's Motion to Exclude Any and All Evidence and Expert, or Other, Opinion Testimony of Todd Romazko (Doc. 33) and GeoVera's Motion for Final Summary Judgment (Doc. 35). Plaintiffs Jonathon Dias and Elisabeth Dias filed responses in opposition to the motions (Docs. 37, 38, 50), and GeoVera filed a Reply (Doc. 41) in support of its Motion for Final Summary Judgment. The Court held a hearing on the motions on May 24, 2021, the record of which is incorporated by reference.

## I.   BACKGROUND

### A. Procedural Posture

In a Complaint (Doc. 1-4) filed in Florida state court on September 27, 2019, the Diases alleged that GeoVera improperly failed to pay a claim under their homeowner's insurance policy.[1] After removing[2] the case to federal court (Doc. 1), GeoVera filed an Answer, Affirmative Defenses, and Demand for Jury Trial (Doc. 4),[3] in addition to a Motion for Partial Summary Judgment regarding the issues of interior damage, roof damage, removal and replacement of window screens, and re-screening of the pool enclosure (Doc. 29). The Diases filed a belated response conceding all issues except roof damage. (Doc. 31). The Court had yet to rule on the remaining roof damage issue when GeoVera filed a Motion for Final Summary Judgment (Doc. 35). GeoVera also filed Daubert motions to exclude the testimony of the Diases' experts, Todd Romazko, a public

---

[1] Previously, American Hero Construction, LLC was also a Plaintiff in this case. The Diases alleged that they assigned a portion of their benefits under the policy to American Hero. (Doc. 3 ¶ 9). On February 26, 2020, the Court issued an Endorsed Order granting Defendants' motion to dismiss the claim of American Hero and directing that American Hero be terminated as a party. (Doc. 22). Thus, American Hero is no longer a party to this lawsuit.

[2] Counsel for the Diases sent a letter to GeoVera with a $119,600.47 estimate for damages, including $92,001.41 for the roof alone. (Doc. 1-2 at 5–7).

[3] The Diases filed a document titled Denial of Affirmative Defenses as a blanket denial of all affirmative defenses (Doc. 7), which was later stricken by Magistrate Judge James R. Klindt for failure to comply with Federal Rule of Civil Procedure 7(a). (Doc. 9).

adjuster, and John Sparks, a former employee of American Hero Construction. (Docs. 33, 34).[4] The Diases filed belated responses to all three motions (Docs. 37, 38, 39) and withdrew Sparks (Doc. 39). Thus, the <u>Daubert</u> motion regarding Sparks (Doc. 34) is now moot. The Diases also filed a Notice of Supplemental Response to Daubert Motion.[5] (Doc. 50).

GeoVera advised the Court that its Motion for Partial Summary (Doc. 29) was subsumed within its Motion for Final Summary Judgment (Doc. 35), so the Motion for Partial Summary Judgment (Doc. 29) has been terminated. (Doc. 45). GeoVera's Motion for Final Summary Judgment (Doc. 35) and GeoVera's Motion to Exclude Any and All Evidence and Expert, or Other, Opinion Testimony of Todd Romazko (Doc. 33) remain and are ripe for consideration.

### B. Facts

The Diases obtained a homeowner's insurance policy ("the Policy") from GeoVera under Policy Number GC70029151, effective May 16, 2018 through May 16, 2019. (Doc. 3-1 at 2). The Diases allege that a storm on December 20,

---

[4] At the hearing, Plaintiffs' counsel informed the Court that Sparks worked essentially as a salesperson for American Hero Construction, selling roofs.

[5] GeoVera's motion to exclude Romazko's testimony was filed on October 30, 2020, and the Diases' response was therefore due on November 13, 2020. The Notice of Supplemental Response to Daubert Motion was not filed until April 22, 2021, and the notice simply informs the Court that Romazko was accepted as an expert witness in two unrelated state court cases. (Doc. 50).

2018 caused damage to the insured property, including to the roof. (Doc. 3 ¶ 4). At the May 24, 2021 hearing, counsel for the Diases acknowledged that Sparks of American Hero told the Diases their roof damage may have been due to the December storm, and then the Diases made their insurance claim on that basis. Mr. Dias reported the damage to GeoVera on May 11, 2019.[6] (Docs. 35-4 at 21:9–20; 35-5 at 7:19–8:9). GeoVera commenced an investigation under Claim Number 1824200533. (Doc. 35-1).

During the investigation, GeoVera retained Independent Adjuster Travis Stevens to inspect the property. (See id.). Stevens inspected the property on May 15, 2019 and observed that "[t]he tile roof is original to the dwelling (1995)

---

[6] GeoVera does not raise the issue of notice, but the Policy includes notice requirements for claims in a section titled "Duties After Loss:"

> In case of a loss to a covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage . . . Give prompt notice to us or our agent of a claim . . . The term "prompt notice" means within 72 hours after the date you knew or reasonably should have known about the loss or damage . . . . With respect to windstorm, hurricane or catastrophic ground cover collapse claims, the claim is barred unless re-ported promptly and; [] For a windstorm or hurricane claim, in accordance with the terms of this policy and within three years after the hurricane first made landfall or the wind-storm caused the covered damage.

(Doc. 3-1 at 48–49). Mr. Dias claims that his reasons for delay were being busy at work and that the claims process is lengthy. (Doc. 33-3 at 36:24–37:4).

and has minor cracks in a few locations. This does not appear to be wind related but wear and tear over time." Id. at 77–78. He concluded: "I do not believe the wind caused the minor roof damages. Water intrusion caused the interior ceiling damages." Id. at 77. Thus, GeoVera denied coverage for the roof based on Policy exclusions but agreed to extend coverage for water damage to the house's interior. Id. at 85. As the basis for denying roof coverage, GeoVera points to Policy language that excludes coverage for issues like "wear and tear," "marring," "latent defects," "inherent vice or any quality in property that causes it to damage or destroy itself," "settling, shrinking, bulging or expansion," or faulty "design, specifications, workmanship, repair, construction, renovation, remodeling, grading, [or] compaction." (Doc. 35 at 5–6).

GeoVera later also retained Anthony Oliver, P.E., to re-inspect the property for purposes of this litigation and disclosed him as an expert on August 28, 2020. (Doc. 35-1 at 3 ¶ 8). Oliver determined that roof damage was not due to wind on December 20, 2018 or other storms. Id. ¶ 9. As a result of Oliver's assessment, GeoVera maintained its denial of coverage for roof damage. Id. GeoVera claims that its investigation:

> [R]evealed that the roof of the insured property is original to the 1995 construction of the property, revealed no storm-related damage to the roof of the insured property, and revealed minor cracks in a few locations on the roof, indicative of, and consistent with, age, wear, tear, deterioration, neglect, and/or inadequate maintenance.

5

(Doc. 35 at 5).

The Diases identified their own expert, Public Adjuster Todd Romazko, in their responses to interrogatories served on May 5, 2020. (Doc. 35-2 at 12). The Diases did not timely provide an expert report from Romazko, as required under Federal Rule of Civil Procedure 26.[7] Still, GeoVera took Romazko's deposition on June 30, 2020. (See Doc. 35-3). Romazko concluded that the roof damage was due to wind on December 20, 2018, though he had not consulted weather data for that date. Id. at 14:5–16. He instead determined the date of loss "[p]er the named insured and the insurance company." Id.

GeoVera now moves to exclude Romazko's testimony under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), under Federal Rule of Evidence 702, and for failure to comply with Federal Rule of Civil Procedure 26 (Doc. 33). Additionally, GeoVera requests that the Court grant final summary judgment in its favor and find "that [GeoVera] is not liable to Plaintiffs for any damages allegedly sustained to the exterior, including roof, of their property." (Doc. 35 at 3).

---

[7] At the hearing, the Court was informed that Romazko's expert report was belatedly served upon GeoVera around January 2021.

## II.    DISCUSSION

### A. Motion to Strike Expert Testimony

The parties' mandatory initial disclosures under Federal Rule of Civil Procedure 26 were due on December 23, 2019, and expert reports were due on July 31, 2020. (Doc. 12). The Diases disclosed Romazko as an expert by way of answers to interrogatories. (Doc. 33-1 at 12). GeoVera argues that Romazko should be excluded based on the failure to timely provide a Rule 26 expert report alone, as "[t]he automatic sanction for a violation of Rule 26(a) is preclusion." Whitmer v. Target Corp., No. 3:09-cv-962, 2011 WL 13143133, at *2 (M.D. Fla. Jan. 14, 2011) (quoting Giladi v. Strauch, No. 94 Civ. 3976, 2001 U.S. Dist. LEXIS 4645, at *8 (S.D.N.Y. Apr. 16, 2001)). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[8] The Diases failed to properly disclose

---

[8] Sanctions under Federal Rule of Civil Procedure 37 are meant to "prevent unfair prejudice to the litigants and insure the integrity of the discovery process." Bettis v. Toys "R" Us—Delaware, Inc., 273 F. App'x 814, 818 n.5 (11th Cir. 2008) (citing Aztec Steel Co. v. Florida Steel Corp., 691 F.2d 480, 482 (11th Cir. 1982)). Plaintiffs' counsel should have complied with Federal Rule of Civil Procedure 26. At the hearing, however, counsel for GeoVera admitted that GeoVera was not ultimately prejudiced by Plaintiffs' counsel's failure to timely serve an expert report. GeoVera was informed that Romazko was an expert, was able to take Romazko's deposition in a timely manner, and did not file motions to compel expert disclosures or reports at any point during

experts and failed to provide expert reports, but even if they had complied with Rule 26, Romazko's testimony does not pass muster under <u>Daubert</u>.

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Judges act as gatekeepers to ensure that expert testimony is "not only relevant, but reliable." <u>Daubert</u>, 509 U.S. at 589; <u>see also</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999). The facts and circumstances of a particular case determine the reliability of an expert's testimony. <u>See</u> <u>Hughes v. Kia Motors Corp.</u>, 766 F.3d 1317, 1329 (11th Cir. 2014).

To determine whether expert testimony is admissible, trial courts consider: (1) whether the expert is "qualified to testify competently regarding the matter he or she intends to address," (2) whether the methodology through which the expert reaches his or her conclusions is "reliable as determined by a

---

this litigation. Still, "[t]he burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." <u>Greater Hall Temple Church of God v. Southern Mut. Church Ins. Co.</u>, 820 F. App'x 915, 920 (11th Cir. 2020) (quoting <u>Leathers v. Pfizer, Inc.</u>, 233 F.R.D. 687, 697 (N.D. Ga. 2006)). Plaintiffs' counsel made no such showing.

Daubert inquiry," and (3) whether the testimony "assist[s] the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1335 (11th Cir. 2010). To assess whether testimony is reliable, trial courts may look to various factors, including: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Id. (citing Daubert, 509 U.S. at 593–94). "Courts are cautioned not to admit speculation, conjecture, or inference that cannot be supported by sound scientific principles." Rider v. Sandoz Pharm. Corp., 295 F.3d 1194, 1202 (11th Cir. 2002).

The party that offers the testimony bears the "substantial" burden of demonstrating admissibility by a preponderance of the evidence. Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1107 (11th Cir. 2005). "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Williams v. Mosaic Fertilizer, LLC, 889 F.3d 1239, 1249 (11th Cir. 2018) (quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

9

Romazko testified that his opinion about the cause of roof damage was based on conversations with Mr. Dias and a visual inspection of the roof. (Doc. 35-3 at 14:5–16). When asked what he had determined to be the cause of the alleged damage, he responded, "wind." (Doc. 33-2 at 14:5-8). When asked how he determined the December 20, 2018 date of loss, he answered, "[p]er the named insured and the insurance company." Id. at 14-16. Later, when asked why he believed the damages observed were from a single storm event, he replied "[b]ased on what the insured told me," and clarified that he asked Mr. Dias whether the roof ever had prior damage, and when Mr. Dias said no, Romazko concluded that the damage was all from the alleged date of loss. Id. at 26:13-25. Romazko did not know how Mr. Dias identified that date. Id. at 27:1-3. When asked to distinguish wind damage from foot traffic, Romazko observed that foot traffic usually cracks roof tiles in the middle, and wind damage typically chips the edges or corners of the tiles. Id. at 27:8-12.

The Diases filed a two-page response in opposition to GeoVera's motion to strike Romazko's testimony. (Doc. 38). The response emphasizes that "Romazko [is] [sic] eminently qualified to assess cause of loss, scope of loss and amount of damage in a storm and roof claim" because of twelve years of experience, training, and having conducted over 6,000 roof inspections. Id. at 1. The response also states that Romazko's methodology is standard in the industry and consisted of interviewing the insured, inspecting and

photographing the suspected loss, and using his knowledge and experience to reach a conclusion about cause and scope of loss. Id. at 2. The response fails, however, to provide any methodology underlying Romazko's conclusion, to explain why Romazko did not consult weather data for December 20, 2018, or to address GeoVera's other concerns about Romazko's testimony. The Diases also submitted a two-page affidavit from Romazko (Doc. 37-1) as an attachment to their Response to GeoVera's Motion for Final Summary Judgment in which Romazko asserts that during his inspection, he "found lifted, broken, missing shingles that require replacement of the roof" and determined that the damage was due to "wind and hail" during the December 20, 2018 storm. (Doc. 37-1 at 1–2). But again, he fails to explain the methodology used to arrive at that conclusion, or how he was able to rule out other causes. See id.

Greater Hall Temple Church of God v. Southern Mut. Church Ins. Co., 820 F. App'x 915 (11th Cir. 2020) is instructive. In similar circumstances, the Eleventh Circuit affirmed the district court's exclusion of the expert testimony of Shawn Brown regarding roof damage to a church. Id. at 918–19. Brown's process mirrored that of Romazko and, as found by the assigned United States Magistrate Judge and adopted by the district court, failed to meet the standards of Daubert:

> Brown's methodology in examining the church was limited to a physical examination . . . . Brown had no measurements of the wind speeds during Hurricane Matthew and had no independent

11

knowledge of the condition of the church or its roof prior to Hurricane Matthew. Moreover, Brown's visual examination of the building, without any knowledge of the buildings prior condition or knowledge of the wind speeds the building was subjected to, is not a sufficiently reliable methodology to allow Brown to provide an expert opinion as to the cause of the roof damage. Compare [Coconut Key Homeowners Ass'n, Inc. v. Lexington Ins. Co., 649 F. Supp. 2d 1363, 1371 (S.D. Fla. 2009)] (expert's methodology in forming an opinion concerning the cause of roof damage was not reliable where expert did not know wind speed in the area during the storm in question, had not ruled out alternative causes of roof damage, and had no background in engineering) with [Clena Investments, Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 664 (S.D. Fla. 2012)] (expert's methodology in forming an opinion concerning the cause of roof damage was reliable where a trained engineer reasoned that the damage had been caused by the second of two hurricanes because if it had been preexisting, the roof would have been ripped off during the second storm). Without a reliable methodology, a witness's testimony should not be cloaked in the imprimatur of expert testimony.

Greater Hall Temple Church of God v. Southern Mut. Church Ins. Co., No. 2:17-cv-111, 2019 WL 4147589, at *11 (S.D. Ga. Aug. 30, 2019), objections overruled, No. 2:17-CV-111, 2020 WL 1809747 (S.D. Ga. Jan. 13, 2020), aff'd in part, rev'd in part on other grounds, 820 F. App'x 915 (11th Cir. 2020).

Like expert Brown in Greater Hall Temple Church, Romazko is not an appropriate expert in this case. Romazko inspected the roof only once. He did not review other records or documents, and he based critical determinations on mere conjecture. Romazko offered no methodology to support his opinion about the timing and type of roof damage. His opinion of the date of loss was based solely on information from the Diases, who got it from Sparks, who is now

nowhere to be found to establish how he arrived at the December 20, 2018 date. GeoVera's Motion to Exclude Any and All Evidence and Expert, or Other, Opinion Testimony of Todd Romazko (Doc. 33) is due to be granted. Romazko's testimony will be stricken.

### B. Motion for Final Summary Judgment

A motion for summary judgment should be granted only when the evidence in the record—including pleadings, depositions, answers to interrogatories, admissions, and affidavits—shows that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must 'affect the outcome of the suit' and must be 'such that a reasonable jury could return a verdict for the nonmoving party.'" Williams v. Central Processing Corp., No. 5:12-cv-380-Oc-10PRL, 2014 WL 982764, at *5 (M.D. Fla. Mar. 12, 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. Celotex, 477 U.S. at 323. If the movant is successful, the burden shifts to the nonmovant to show sufficient evidence of a dispute regarding an issue for which it will bear the burden of proof at trial. Id. 322–323; see also Founders Ins. Co. v. Tome, No. 6:10-cv-973-Orl-36GJK, 2012

WL 13102264, at *2 (M.D. Fla. Mar. 2, 2012) ("When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact."). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005); see also Berend v. Bloomin' Brands, Inc., No. 8:16-cv-1177-T-30AAS, 2017 WL 3087907, at *4 (M.D. Fla. July 20, 2017) ("[T]here must exist a conflict in substantial evidence to pose a jury question.").

Without Romazko's testimony, the Diases are the only remaining witnesses who could testify in support of their case. While lay testimony alone may suffice in some cases, cf. Greater Hall Temple Church, 820 F. App'x at 922 (interpreting Georgia law to "indicate[] that expert testimony is not necessarily required to prove causation in the insurance-contract context"), this is not such a case. Neither Mr. Dias nor Mrs. Dias has direct recollection of witnessing the December 20, 2018 storm; instead, according to their counsel, they were told by Sparks (who is nowhere to be found) that the storm may have caused damage to their roof. Mr. Dias testified that he does not remember whether the storm was a hailstorm or a wind storm, does not recall the exact date of the storm, and does not remember whether there was power loss from the storm. (Doc. 33-3 at 25:1–26:7). Mrs. Dias testified that she believes the date of loss "was around Christmas of 2018" having "read the legal documents that the date is December

14

20th of 2018." (Doc. 33-4 at 7:19–8:3). She stated that the date was determined when the Diases "noticed the leak in the garage around Christmas of 2018 and when we kind of went through, it just made sense that it was a storm that had passed right before then." Id. at 7:25–8:4. Their testimony offers only speculation and inadmissible hearsay from Sparks that the damage to the then twenty-three-year-old roof occurred from a December 2018 storm, or any weather event within the policy period. The Diases' conjecture is not evidence of causation in this case, particularly where the insureds waited five months to file an insurance claim and did so at the suggestion of Sparks. See Anderson, 477 U.S. at 249–50 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for the jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted).

The Diases are without admissible evidence that their roof damage was caused by a covered event during the Policy period. Therefore, there is no remaining genuine dispute as to any material fact in this case.

Accordingly, it is hereby

**ORDERED:**

1.     Defendant GeoVera Specialty Insurance Company's Motion to Exclude Any and All Evidence and Expert, or Other, Opinion Testimony of Todd Romazko (Doc. 33) is **GRANTED**.

15

2.     Defendant's Motion for Final Summary Judgment (Doc. 35) is **GRANTED**.

3.     The Clerk will enter final judgment in favor of GeoVera Specialty Insurance Company and against Jonathon and Elisabeth Dias. The Clerk should then close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 14th day of June, 2021.[9]



TIMOTHY J. CORRIGAN
United States District Judge

tnm
Copies:

Counsel of record

---

[9] On April 22, 2021, the Diases' counsel filed a Notice of Conflict, purporting to give the Court notice of a conflict with the trial of this case in May. (Doc. 51). On April 13, 2021, however, the Court had issued an Order vacating the May 3, 2021 trial term setting. (Doc. 49). Thus, counsel was mistaken regarding the trial term. In a prior Order, the Court noted concern about counsel's repeated failure to meet deadlines, which resulted in three Orders to Show Cause (Docs. 26, 30, 36) in this case that were ultimately discharged. (Doc. 44 at 2 n.1). Then, there was the failure to timely serve the expert report. Plaintiffs' counsel's level of practice in this case has been unacceptable. At the May 24, 2021 hearing, Plaintiffs' counsel assured the Court that these issues will not recur. The Court will have no choice but to take action if counsel neglects case management responsibilities in the future.